**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

ORNETHA JACKSON                                                                                      PLAINTIFF

V.                                              2:13CV00135-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ornetha Jackson, appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      BACKGROUND**

On July 19, 2011, Ms. Jackson protectively filed for DIB benefits due to uncontrollable high blood pressure, black-out spells, short term memory loss, fainting, poor vision, carpal tunnel syndrome, and depression. (Tr. 186) Ms. Jackson's claims were denied initially and upon reconsideration. At Ms. Jackson's request, an Administrative Law Judge ("ALJ") held a hearing on August 27, 2012, where Ms. Jackson appeared with her lawyer. (Tr. 59) At the hearing, the ALJ heard testimony from Ms. Jackson and a vocational expert ("VE"). (Tr. 60-93)

The ALJ issued a decision on October 11, 2012, finding that Ms. Jackson was not disabled under the Act. (Tr. 8-16) The Appeals Council denied Ms. Jackson's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Jackson, who was forty-seven years old at the time of the hearing, has her GED. (Tr. 26, 69) She has past relevant work as a data entry clerk, air condition assembler, and house parent. (Tr. 89)

**II.     DECISION OF THE ADMINISTRATIVE LAW JUDGE**[1]

The ALJ found that Ms. Jackson had not engaged in substantial gainful activity since March 24, 2010, and she had the following severe impairments: hypertension, adjustment disorder, borderline intellectual functioning, carpal tunnel syndrome status post carpal tunnel release. (Tr. 11) However, the ALJ found that Ms. Jackson did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (*Id.*)

According to the ALJ, Ms. Jackson has the residual functional capacity ("RFC") to perform sedentary work, and she can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps or stairs (but never climb ropes, ladders, or scaffolds). She can frequently handle, finger, and feel bilaterally. However, she must avoid extreme temperatures, humidity, gases, fumes, other environmental irritants, avoid unprotected heights and dangerous machinery, and cannot drive an automobile as a job duty. Ms. Jackson is limited to simple, routine, and repetitive work with occasional contact with supervisors, co-workers, and the general public. (Tr. 12) The VE testified that the jobs available with these limitations were document preparer and addresser. (Tr. 90-91)

After considering the VE's testimony, the ALJ determined that Ms. Jackson could perform a significant number of jobs existing in the national economy, and found that Ms. Jackson was not disabled.

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

**III.   ANALYSIS**

    **A.   Standard of Review**

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    **B.   Ms. Jackson's Arguments for Reversal**

Ms. Jackson asserts that the Commissioner's decision should be reversed because it is not support by substantial evidence. She argues that the ALJ's hypothetical was in error since it was based on an RFC not supported by the evidence. Additionally, she claims that the RFC "was based largely on his determination that Jackson was not telling the truth about her pain and resulting limitations." (Doc. No. 11)

Regarding the hypothetical and RFC, the ALJ's hypothetical included all limitations he found credible. An ALJ need not include limitations for impairments that he did not find credible.[3]

Ms. Jackson's other argument goes to the ALJ's credibility assessment, and she contends that there was evidence that she is disabled. However, the issue is not whether there was evidence to

---

[3]*Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) (holding that a hypothetical "need only include impairments that are supported by the record and that the ALJ accepts as valid").

support Mr. Jackson's claim of disability, but whether there was substantial evidence to support the ALJ's decision.[4]  As set out below, there was substantial evidence to support the ALJ's decision:

    1. Non-compliance[5] -- The ALJ recognized that Ms. Jackson had a "history of noncompliance with medical treatment." (Tr. 13)  For example, notes from July 2012 indicate a "personal history of noncompliance with medical treatment, presenting hazards to health." (Tr. 744). At that visit, her blood pressure was 202/123, but she had not taken her blood pressure medication. (*Id.*)

It also appears that Ms. Jackson has not lost weight, as directed by her doctor.  For example, in December 2011, she weighed 179 pounds, and that increased to 187 pounds by July 2012.  (Tr. 740, 746-747)

    2. Lack of Treatment[6] -- Very few of the treatment records for the relevant time period relate to Ms. Jackson's carpal tunnel syndrome or high blood pressure.  Since her alleged onset date of March 20, 2010, she reported to the doctor on October 27, 2010, because of dizziness, which was later found to be related to her high blood pressure.  (Tr. 421)  She picked up refills of medication in November 2010 and again in April 2011.  (Tr. 585, 589)  She had carpal tunnel surgeries in July and September 2011, and reported that she "had no problems after surgery" and was "doing well . . . ." (Tr. 515, 521, 542)  In January 2012, she went to the ER, and, oddly, her blood pressure was found to be "diminished." (Tr. 615)  Though Ms. Jackson clearly has issues with her

---

[4]*Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").

[5]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

[6]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir.2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

blood pressure, and has a history of carpal tunnel syndrome, the lack of frequency of visits supports the ALJ's position that the conditions may not be as severe as described by Ms. Jackson.

   3. Controlled With Medication[7] -- On a form dated April 11, 2012, Ms. Jackson claimed that her blood pressure cannot be controlled. (Tr. 244) However, as mentioned in the previous paragraph, her blood pressure issues generally appear to be resolved with medication; otherwise, there would be far more visits to the doctor to address the problem.

   4. Inconsistencies -- A Third Party Function report indicated that Ms. Jackson's daughter helps her get dressed, baths her, and cooks for her. (Tr. 199) Yet at the February 2010 hearing (before the alleged onset date) Ms. Jackson testified that she could dress, bathe, and take out the trash. (Tr. 38-39) At the August 2012 hearing, however, Ms. Jackson testified that her daughter did everything for her. (Tr. 67, 71) There is no objective medical evidence that would support this much decrease in Ms. Jackson's functions of daily living. In fact, from late 2010 into 2012, doctors repeatedly noted that Ms. Jackson "can perform all activities of daily living without assistance." (Tr. 427, 439, 718)

At the hearing, Ms. Jackson also testified that she had not driven in several years. (Tr. 75) But, during an October 2011 psychological assessment, Ms. Jackson informed the doctor that she could drive familiar routes, but depended on her daughter's help when taking unfamiliar routes. She also reported that she could perform household chores, but "not without physical pain." (Tr. 546)

Ms. Jackson testified that she still has trouble holding things with her hands and ongoing pain, but after her carpal tunnel surgery, there is hardly any mention of persistent carpal tunnel issues. (Tr. 67) The ALJ properly considered the inconsistencies when weighing the credibility of

---

  [7]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

Ms. Jackson's claims.

## IV.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Ms. Jackson's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 26th day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE